IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

IN THE MATTER OF: ) CASE NO. BK12-81843-TJM
)
CHADWICK ALLEN POOLE, ) CH. 13
)
)
Debtor(s). )

## ORDER

Trial was held in Lincoln, Nebraska, on March 5, 2013, regarding Fil. #9, Chapter 13 Plan, filed by the debtor, Fil. #23, Objection to Confirmation of the Plan, filed by Cheryl J. Poole, and Fil. #29, Response, filed by the debtor. Dan Peters appeared for the debtor and C.J. Poole appeared on her own behalf.

The debtor has filed a Chapter 13 plan. His former spouse has objected. Contrary to the terms of the dissolution decree and settlement documents, Mr. Poole has failed to pay $3,000.00 in attorney fees owed to Mrs. Poole's attorney; failed to pay a $4,2960.00 debt to First National Bank of Omaha; and failed to pay a lump sum of $25,000.00 or monthly installment payments of $350.00 on the $25,000.00 judgment. She believes each of those are in the nature of support and should not be dischargeable. The plan treats those three obligations as general unsecured debts.

It is clear from the documentary evidence at Fil. #58, including a deposition of Mr. Poole and a transcript of the dissolution proceeding, that the $25,000.00 obligation running from the debtor to his former spouse was negotiated in an attempt to even up the financial circumstances of the parties. During the pendency of the dissolution action, and after the entry of a temporary order directing Mr. Poole not to liquidate any assets, he liquidated more than $80,000.00 from various accounts, without informing his spouse. The agreement between the parties approved by the Douglas County district court judge included a transfer of approximately $12,000.00 in a checking account directly to Mrs. Poole. It also required Mr. Poole to surrender the funds in a 401(a) account. It then required the payment of the $25,000.00, which was anticipated would come from the equity in the sale of their home, but in case there was no such equity, he was obligated to pay the amount off in installments of $350.00 per month.

Mrs. Poole did get the funds from the checking account and the 401(a) account and did receive $350 a month for two months. The house has not been sold and, from the testimony at trial, it appears there is no equity.

## FINDINGS OF FACT

I find as a fact that the obligation to pay the First National Bank debt and the attorney fees are in the nature of support. I also find that the obligation to pay $25,000.00 is in the nature of support. That finding is based upon the language of the settlement documents. The decree provides:

> <u>Alimony</u>. Commencing January 1, 2012, Husband shall pay to Wife, through automatic income withholding through the Nebraska Child Support Payment Center the sum of $850.00 due and payable on the 1st day of each month for sixty-five (65) months for alimony or spousal support terminable upon death of either party or

>   remarriage of Plaintiff.
>
>   Commencing January 1, 2012, Husband shall pay to Wife, through automatic income withholding through the Nebraska Child Support Payment Center, the sum of $1.00 on the 1st day of each month for sixty-five (65) months for alimony or spousal support and said sum shall be an alimony award in addition to the aforementioned award and modifiable only in the event that Husband fails to pay the property installment payments or any increment thereof as defined in paragraph 20 of the Property Settlement Agreement and/or in the event Husband fails to pay any marital debt assigned to him or any increment thereof as indicated in paragraph 16 of the Property Settlement Agreement, including failure to pay by virtue of discharging any debts or increments thereof in a bankruptcy proceeding and including, but not limited to, paying less than is owed through a negotiation process and/or fails to pay any expenses and debt obligations associated with the real estate as defined in the second subparagraph of paragraph 9 of the Property Settlement Agreement.

¶ 5 at 4-5 (Fil. #58-1, Ex. A).

The Property Settlement Agreement attached to the decree restates the language of those two paragraphs at pages 3 and 4. Paragraph 16 of the Property Settlement Agreement is labeled <u>Marital Debts of the Parties</u> and provides that the husband shall be responsible for the First National Bank line of credit #2964 in the approximate amount of $4,296.00 as of December 7, 2011. It further provides that the husband shall indemnify and hold the wife harmless from such liability.

Paragraph 17 of the Property Settlement Agreement provides for the attorney fees which were to be paid on or before June 1, 2012, and which have not been paid.

Paragraph 20 of the Property Settlement Agreement is entitled <u>Property Settlement Equalization Payment</u>. It provides:

>   Husband shall pay to Wife the sum of $25,000.00 as a property settlement equalization payment as necessary for the benefit of Wife and the parties' children. This amount shall be repaid at the rate of $350.00 per month due and owing on the 1st day of each month commencing June 1, 2012. This amount shall accrue interest at the rate of 4% per annum and shall be paid through the Clerk of the District Court of Douglas County. At the time of closing on the sale of the marital residence, Husband shall pay to Wife from his segregated share the remaining amount of the $25,000.00 still due and owing.

I interpret the meaning of the decree language and the property settlement language that even though it is clear that the $25,000.00 should come from marital property, if it is available, to support the needs of the wife and children, such amount is nonetheless due and payable on a monthly basis in the form of alimony if it is unpaid or discharged in a bankruptcy case. I find as a fact that the $25,000.00 award is in the nature of support.

## CONCLUSIONS OF LAW

Judge Saladino, in his appellate capacity, wrote extensively about support obligations and non-dischargeable attorney fees in Phegley v. Phegley (In re Phegley), 443 B.R. 154 (B.A.P. 8th Cir. 2011):

> The determination of whether an award arising out of marital dissolution proceedings was intended to serve as an award for alimony, maintenance, or support, or whether it was intended to serve as a property settlement is a question of fact to be decided by the bankruptcy court. Tatge v. Tatge (In re Tatge), 212 B.R. 604, 608 (8th Cir. BAP 1997) (citing Holliday v. Kline (In re Kline), 65 F.3d 749, 750 (8th Cir. 1995)); Adams v. Zentz, 963 F.2d 197, 200 (8th Cir. 1992); Williams v. Williams (In re Williams), 703 F.2d 1055, 1056 (8th Cir. 1983).
> . . .
> The BAPCPA amendments that added § 101(14A) and altered §§ 523(a)(5) and (15) did not change the standard for whether an obligation is in the nature of support. Id. When deciding whether a debt should be characterized as one for support or property settlement, the crucial question is the function the award was intended to serve. Adams v. Zentz, 963 F.2d 197, 200 (8th Cir. 1992); Boyle v. Donovan, 724 F.2d 681, 683 (8th Cir. 1984) (citing Williams v. Williams (In re Williams), 703 F.2d 1055, 1057 (8th Cir. 1983)); see Kruger v. Ellis (In re Ellis), 149 B.R. 925, 927 (Bankr. E.D. Mo. 1993) (finding that in order to determine whether an award represents a property settlement or a maintenance obligation, a court must look to the function an award was intended to serve).
> Whether a particular debt is a support obligation or part of a property settlement is a question of federal bankruptcy law, not state law. See Williams, 703 F.2d at 1056. A divorce decree's characterization of an award as maintenance or alimony does not bind a bankruptcy court but is however a starting point for the determination of the award's intended function. Id.; In re Hamblen, 233 B.R. 430, 435 (Bankr. W.D. Mo. 1999) (due deference should be given to the state court's characterization of the award). The burden of proof under § 523(a)(5) is on the party asserting that the debt is nondischargeable. Lineberry v. Lineberry (In re Lineberry), 9 B.R. 700, 706 (Bankr. W.D. Mo. 1981).
> Factors considered by the courts in making this determination include: the language and substance of the agreement in the context of surrounding circumstances, using extrinsic evidence if necessary; the relative financial conditions of the parties at the time of the divorce; the respective employment histories and prospects for financial support; the fact that one party or another receives the marital property; the periodic nature of the payments; and whether it would be difficult for the former spouse and children to subsist without the payments. Morgan v. Woods (In re Woods), 309 B.R. 22 (Bankr. W.D. Mo. 2004); In re Tatge, 212 B.R. 604, 608 (8th Cir. BAP 1997); Schurman v. Schurman (In re Schurman), 130 B.R. 538, 539 (Bankr. W.D. Mo. 1991) (citing In re Gianakas, 917 F.2d 759 (3d Cir. 1990)).
> Exceptions from discharge for spousal and child support deserve a liberal construction, and the policy underlying § 523 favors the enforcement of familial obligations over a fresh start for the debtor, even if the support obligation is owed directly to a third party. See Holliday v. Kline (In re Kline), 65 F.3d 749 (8th Cir. 1995); Williams v. Kemp (In re Kemp), 242 B.R. 178, 181 (8th Cir. BAP 1999), aff'd 232 F.3d 652 (8th Cir. 2000).

443 B.R. at 156-58.

The parties' property settlement agreement directed the debtor to pay $3,000 of his wife's attorney's fees, to be paid to the attorney. Fil. No. 58, Ex. A, at 9, ¶ 17. The Eighth Circuit Court of Appeals has long held that an award of attorney's fees, if intended to serve as maintenance or support, are non-dischargeable even if payable to someone other than the spouse. Williams v. Williams (In re Williams), 703 F.2d 1055, 1057 (8th Cir. 1983); Holliday v. Kline (In re Kline), 65 F.3d 749, 751 (8th Cir. 1995). Bankruptcy courts have ruled that the BAPCPA amendments in 2005 did not substantively change § 523(a)(5), so Kline and other Eighth Circuit precedent remains applicable. In re Andrews, 434 B.R. 541, 546 (Bankr. W.D. Ark. 2010); Kelly v. Burnes (In re Burnes), 405 B.R. 654, 658-59 (Bankr. W.D. Mo. 2009). Therefore, the attorney's fees are not dischargeable and must be accounted for in the plan.

The provision of the decree ordering the debtor to pay the First Nebraska Bank line of credit, and the "indemnify and hold harmless" clause included therein, render that debt non-dischargeable.

> [I]n the case of an obligation to pay a debt owed to a third party, it is the obligation to hold the spouse or former spouse harmless that is presumptively nondischargeable under this section. *See* 140 Cong. Rec. H10752, H10770. "A property settlement incorporated by a divorce decree that apportions third party debt to one spouse means that the obligor-spouse indemnifies the obligee-spouse in the event that the obligee is required to pay." In re Sturdivant, 289 B.R. 392, 399 (citing Johnston v. Henson (In re Henson), 197 B.R. 299, 303 (Bankr. E.D. Ark. 1996)).

Douglas v. Douglas (In re Douglas), 369 B.R. 462, 463-64 n.2 (Bankr. E.D. Ark. 2007); see also Gibson v. Gibson (In re Gibson), 219 B.R. 195, 202-03 (B.A.P. 6th Cir. 1998) ("A debtor's obligation as part of a decree or separation agreement . . . to hold a spouse 'harmless' on a third-party obligation [is an example] of incurring a debt which satisfies the qualifying language of § 523(a)(15)[.]")

As to the alimony modification provision, it is commonly known as a Collett provision because it was described and upheld in the case of Collett v. Collett, 707 N.W.2d 769 (Neb. 2005). The decision and its effect were summarized by the Nebraska Court of Appeals in Murphy v. Murphy, 759 N.W.2d 710 (Neb. Ct. App. 2008):

> Shan Collett and Kimberly Collett were both veterinarians, and the husband, Shan, borrowed money from a bank to establish a veterinary clinic. The clinic was rather quickly unsuccessful. The wife, Kimberly, had guaranteed the loan. Shan filed a chapter 7 bankruptcy a month before their pending divorce went to trial. The evidence was that both parties expected that the collateral would cover the bank debt – which expectation turned out to be incorrect. The trial court awarded Kimberly $1 a year in alimony in March 2002, but in November 2003, the bank obtained a deficiency judgment against Kimberly for nearly $69,000. That judgment caused Kimberly to seek a modification of her alimony award, alleging a change in circumstances. Kimberly introduced evidence showing that to pay the judgment, she would be required to pay $800 a month for 122 months, that an increase in alimony would increase her tax liability by $161.41 per month, and that her yearly income had decreased from $52,000 to $38,000 since the divorce, whereas Shan's monthly income had increased from $1,400 to $4,000 plus benefits. The district court modified the alimony award from $1 a year to $950 per month for 123 months, and Shan appealed. Shan's main attack on this decision was that it violated the U.S.

> Bankruptcy Code as well as the Supremacy Clause of the U.S. Constitution. The Nebraska Supreme Court affirmed the trial court's modification of the alimony award.
>
> In <u>Collett</u>, as well as in the case before us, the factual pattern is a modification of an alimony obligation to account for a debt, which an obligated party was able to discharge in bankruptcy, with the other party being left with responsibility of the discharged debt. [The appellant's argument in this case], similar to the husband's argument in <u>Collett</u>, is that her discharge prevents the reimposition of this debt on her, in effect, via a reduction in her monthly alimony payment.
>
> . . .
>
> The court in <u>Collett</u> noted the facts that the decree originally included an award of alimony and that the modification was sought on the basis of a change in circumstances, and then said:
>
>> Other courts addressing this scenario have rejected arguments that modification of alimony is merely a "repackaging" of debts discharged in bankruptcy and thus prohibited by federal law, if the party seeking modification is able to demonstrate an actual change in financial circumstances subsequent to the dissolution and bankruptcy of the former spouse. <u>See</u>, <u>In re Siragusa</u>, 27 F.3d 406, 407 (9th Cir. 1994); <u>Smith v. Smith</u>, 741 So. 2d 420 (Ala. Civ. App. 1999); <u>In re Marriage of Trickey</u>, 589 N.W.2d 753 (Iowa App. 1998). The court in <u>In re Marriage of Trickey</u> articulated what we believe to be the correct analytical approach: "If the modification is essentially a reinstatement of the property settlement under the guise of alimony, the modification violates section 524 and is not permitted. . . . Mere attempts to 'end run' around a bankruptcy discharge are not allowed. . . . However, if the alimony modification merely takes into account the fact that one spouse would no longer receive the property settlement payments upon which the original support award was premised and the discharge results in changed financial circumstances, then modification will not violate federal bankruptcy law." . . . 589 N.W.2d at 757.
>
> <u>Collett</u>, 270 Neb. at 730-31, 707 N.W.2d at 775-76.

<u>Murphy</u>, 759 N.W.2d at 717-18.

The <u>Collett</u> court explained the distinction between dischargeable and non-dischargeable modifications:

> In <u>In re Siragusa</u>, <u>supra</u>, the court determined that a post-bankruptcy alimony modification did not violate the discharge injunction where there was no showing that the former wife was attempting to reinstate a discharged property settlement obligation. Instead, the modification was based on the changed circumstance that the former wife would not receive the future property settlement payments upon which the original alimony award was premised. The court noted that the former husband's bankruptcy constituted a changed circumstance in that it "altered both [the former wife's] need and [the former husband's] ability to pay." <u>In re Siragusa</u>, 27 F.3d at 408. The court therefore concluded that the resulting modification was

justified in that it "merely takes into account the fact that [the former wife] would no longer receive the property settlement payments upon which the original alimony was premised." Id.

Collett, 707 N.W.2d at 776.

In applying the Collett legal analysis to the facts of this case, the Pooles clearly intended that if the property equalization debt was discharged, it would create a change in the wife's financial circumstances that would support a modification to her alimony award. The obligation is in the nature of support and is non-dischargeable, and therefore must be accounted for in the debtor's plan. The current plan is denied confirmation.

IT IS ORDERED: Cheryl J. Poole's objection to confirmation of the plan (Fil. #23) is sustained. The debtor is granted thirty days to file an amended plan.

DATED:      April 3, 2013

                                        BY THE COURT:

                                        /s/ Timothy J. Mahoney
                                        United States Bankruptcy Judge

Notice given by the Court to:
    *Dan Peters
    C.J. Poole
    Kathleen Laughlin

*Movant is responsible for giving notice of this order to other parties if required by rule or statute.